PUTNAM & THOMPSON *v.* HIRAM HILL.

*Contract. Infancy. Fraudulent Representation.*

The defendant, Hiram Hill, put in a bid to the Post Office Department for a mail route in the name and in behalf of his minor son Robert H. Hill, which was accepted on the defendant's personal guaranty. Said Robert was to enter upon his contract July 1st, but did not appear and carry the mail on that day, and after that the defendant procured it to be carried while said Robert held the contract. July 8th the plaintiff Putnam went to Washington to get the contract annulled on the ground of the failure of said Robert to carry the mail the first day of July, and to obtain it for himself, and on the 10th succeeded in his mission, and on the same day the plaintiff Thompson having no confidence in Putnam's success in Washington, purchased of the defendant the said Robert's contract for $200. bonus, and received of the defendant a paper signed Robert H. Hill, requesting the department to transfer or issue the contract to the plaintiffs. At the

Putnam et al. *v.* Hill.

time of the trade Thompson supposed, and the defendant gave him to understand, that he, the defendant, was Robert H. Hill, the person by whom and in whose name the bid was made, and the defendant designedly concealed from Thompson the fact that the bid was in the name of his minor son, knowing that the plaintiffs supposed it was in the defendant's name, and that the defendant was Robert H. Hill, and that but for such belief Thompson would not have made the trade. The defendant wrote and signed said paper without the knowledge of his son Robert H., and without any authority to make the sale and transfer other than what results from the relation of father to a minor son. *Held,* that it is by no means clear that the defendant had not the legal authority to make the trade in behalf of his son; but whether so or not, the son having always acquiesced in the trade, it is binding on the plaintiffs who were partners; if avoidable at all, it is so only at the election of the minor.

The simple fact that the government had a right to annul or avoid the contract with said Robert H. on account of his minority, if such right existed, does not entitle the plaintiffs to rescind their purchase of it. Nor can they recover for the bonus on the ground of the defendant's fraudulent representations,—the rule in such cases being that the party misled is entitled to be put in the same condition as if the representations had been true.

ASSUMPSIT in the general counts to recover $200. bonus paid for a United States mail route contract. Plea, the general issue, and trial by court at the May Term, 1863, BARRETT, J., presiding. The facts are fully set forth in the opinion of the court. Judgment was rendered for the plaintiffs,—to which the defendant excepted.

*Peck & Colby,* for the defendant.

I. This suit was commenced on the same day with the making of the contract and the payment of the money. No offer to rescind, and no previous demand of the money, were made. *This* was necessary, and without it the action cannot be sustained. The defendant was wholly ignorant of the action of the post office department when he traded and when the suit was commenced. *Warner* v. *Wheeler,* 1 D. Ch. 160 ; *Stoddard* v. *Chapin,* 15 Vt. 443.

II. The defendant transferred the contract to the plaintiffs. His relation to R. H. Hill was sufficient authority ; and the act was never repudiated by R. H. Hill.

III. We deny that the contract of R. H. Hill was void, or has been legally annulled by the department. For cause of minority it could not be. § 24, act of July 2, 1836 ; " Postal Laws," p. 12, § 44. "No other than a free white person shall be employed in carrying the mail." § 35, p. 10, Postal Laws ; act of March 3, 1825. This is the only restriction upon the government. It is clear

that the government relies on the *guarantors*, for its security as required. § 47, p. 13, Postal Laws. The settled rule of law is that minority is the personal privilege of the minor, which if not asserted by him cannot be by the other party. *Thompson* v. *Hamilton*, 12 Pick. 428 ; 1 Parsons on Contracts, 277.

IV. For any such failure of performance as the case shows, the post office department had no *power* to set it aside. § 339 of "Regulations," p. 112. It is a sufficient answer to this last ground of *rescission*, that the facts were known to the plaintiffs when they traded with the defendant.

V. Whichever cause the post office department acted upon, (and it is difficult to determine, from McLane's deposition, and the court did not find, which,) the act of the department *was a nullity*. If the contract was valid as against the government, then the fact of the bidder being a minor did not prejudice the plaintiffs, and the concealment of that fact was wholly immaterial.

VI. If the department had *power* to annul or rescind, it could only be done and take effect upon and after *notice* to the contractor. The case shows no notice was given to R. H. Hill, or any communication sent to him on the subject of annulling.

VII. Finally in any view of the case, it is not easy to see the *fraud* which was found below. Whether the defendant was R. H. Hill, or R. H. Hill was of full age, were not facts material to the contract, which was for the transfer of this "*bid and acceptance*," and all right of R. H. Hill under it, and this the plaintiffs took.

*Henry Closson,* for the plaintiffs, maintained that Hill's contract with the government was a nullity from the beginning, and that the trade with the plaintiffs was consummated on the 12th of July. But if said Robert had any contract, the defendant had no power to make the transfer, and nothing passed under the pretended transfer, so that the defendant fraudulently and by false pretenses and representations procured the plaintiffs' money, for which this action will well lie. But the fact is neither of them had the contract, as the bid, though accepted without the knowledge of the disability of the boy, had fallen through, and for two days the plaintiffs actually owned what Thompson supposed he was buying of the defendant. We can hardly suppose a case savoring of dishonesty more strongly. . But it was

contended by counsel for the defence, that the plaintiffs should have rescinded the contract before bringing the suit. We claim that there was no contract to rescind,—that an action for money had and received, would lie at once when the fraud was discovered, without any notice or demand. *Mattocks* v. *Lyman*, 16 Vt. 118 ; also, 18 Vt. 103.

The opinion of the court was delivered by

PECK, J. The plaintiffs seek to recover back the $200. which they paid the defendant as the consideration of the purchase by them of the defendant, of a contract with the Post Office Department for carrying the mail between Woodstock and Charleston, N. H. It appears that in April, 1861, the defendant Hiram Hill put in a bid for the route at the Post Office Department for, and in the name of, Robert H. Hill, his minor son. The bid was accepted, the defendant having guaranteed the bid. July 1st, 1861, the day on which Robert H. Hill was to have entered upon the performance of his contract, neither he nor any one else appeared at Woodstock to take the mail, whereupon the post-master delivered it to the plaintiffs' stage driver, (the plaintiffs having up to that time been carrying that mail,) and reported to the department the failure of the new contractor. The second day of July this defendant at Woodstock procured a man to carry the mail, who carried it to Charleston that day, but not having taken the oath, the post-master at Charleston refused to let him have it to bring to Woodstock, and procured the plaintiffs by their stage driver to bring it to Woodstock that night. On the morning of the 3d day of July, the defendant, under the contract, commenced carrying the mail, and carried it until July 12th, 1861. After the bid was accepted, and previous to July 1st, 1861, the plaintiffs and defendant had some negotiation in reference to the plaintiffs purchasing of the defendant the contract, the plaintiffs offering $100. *bonus* and the defendant asking $200. On the 10th of July, 1861, Thompson, one of the plaintiffs, sent word to the defendant that the plaintiffs would purchase the contract and pay the $200. *bonus* and pay for carrying the mail up to that time ; whereupon the defendant on the same day sent by McCormick, the baggage master on the railroad, a paper requesting the department to transfer or issue the contract to the plaintiffs. This was on the 10th of July. Thompson on the re-

ceipt of that paper (which he retained and which was signed Robert H. Hill,) promised the bearer of the paper he would hand him the money on his return trip the next day. Thompson did not hand the money to McCormick as he agreed, but telegraphed to him that it would be all right. July 12th the defendant went to Charleston to get the money and Thompson then in behalf of himself and his partner, Putnam, closed the trade and paid the defendant $200. for the contract and $44.55 for what the defendant had carried the mail, and kept the paper already mentioned, directed to the post office department. This paper the parties then had before them, and it was the only paper executed. The case shows that the defendant wrote and signed this paper without the knowledge of his son Robert H., and without any authority to make the sale and transfer other than what results from the relation of father to a minor son. The case shows in substance that at the time of the trade Thompson supposed, and the defendant gave him to understand, that he, the defendant, was Robert H. Hill, the person by whom, and in whose name the bid was made, and that the defendant designedly concealed from Thompson the fact that the bid was in the name of his minor son, knowing that the plaintiffs supposed it was in the defendant's name, and that the defendant was Robert H. Hill, and that but for such belief Thompson would not have made the trade.

The plaintiffs claim the right to repudiate the contract of purchase on the ground that the defendant, having no authority from his son to make the sale, deceived them by inducing them to believe that he was Robert H. Hill. The plaintiffs claim that for want of such authority in the defendant they did not acquire the interest of Robert H. Hill in the contract with the post office department. The fact that the plaintiffs were induced to believe that the defendant was Robert H. Hill, the contractor, is of no importance upon this question any further than it has a bearing upon the question of the authority of the defendant to make the contract with the plaintiffs, as affecting the validity of the sale. If the defendant had a legal right to make the sale, he was for every legal purpose Robert H. Hill, and it would be immaterial that the defendant induced the plaintiffs to believe he was so in fact. It is insisted by the plaintiffs that the relation of father and son gave the defendant no authority to make

7

the sale.  It does not appear what the age of the son was, whether five years or twenty, and perhaps it is not important, as in either case he would be equally in law an infant.  The defendant made the bid in the name and in behalf of his son at the department, which was accepted on the defendant's personal guaranty.  This may fairly be intended as a gift to his son of the beneficial interest in the contract, or of whatever it might be sold for.  But the defendant still had the right to the earnings of his son, and the right to control his services.  His son could not devote his time to the performance of his contract without the consent of the defendant.  Nor does it appear whether the minor son had the necessary means of procuring the services to be performed under the contract.  It may have been taken with the view of selling it at a profit.  The son neglected to enter upon the performance of the contract, and the defendant had himself performed it up to this time and was still performing the stipulated service, and which was necessary in order to prevent the entire loss of the contract to his son.  It does not appear that his son had any guardian by appointment.  There is nothing to show but that the defendant was a judicious and responsible man.  Under these circumstances, when the defendant had an opportunity to sell this contract and relieve his minor son of the burden of performing it, and thereby make it net his son $200. free from all risk, it is by no means clear that the defendant had not the legal authority to do so in behalf of his son.  It was a contract, if not *prima facie* for the son's benefit, certainly it cannot be assumed to be to his prejudice.  But it is unnecessary to decide this point, as the son has never revoked it, but acquiesces in it, and has not disturbed the plaintiffs in the enjoyment of the fruits of it.  It is the same as if the minor son had joined with his father in making the sale.  The plaintiffs have no right to avoid the contract for this cause ; if voidable at all it was only so at the election of the minor, and he has not elected to avoid it.

It is claimed also that in consequence of the minority of Robert H. Hill, his contract with the post office department was void, and that for this reason the plaintiffs have a right to rescind the sale to them.  We have not been referred to any provision in the law of Congress or any regulation of the post office department rendering

such contracts void or forbidding contracts with minors. The deposition of McLane does not show any such regulation of the post office department. McLane testifies that the department received notice from the post-master on the 2d day of July of the failure of the contractor, Robert H. Hill, to take the mail on the first day of July, and at or about the same time information was received showing that he was disqualified by law from becoming a contractor, owing to his being a minor. This is but his opinion of the law, and there is nothing to show that it was based on any rule or regulation of the department. If the government stands in the place of an individual, the contract was binding until the minor chose to avoid it. But in such case perhaps the department has the right to avoid a contract for that cause, and if they should, whether they have the strict legal right or not, probably the individual would be without remedy. But this only shows the contract voidable, but not void. There is no certainty the department would exercise that right, as they require every bid and final contract to be accompanied with a responsible guaranty. The simple fact that the government had a right to annul or avoid this contract, does not entitle the plaintiffs to rescind their purchase of it. In actions for damages for fraudulent representations, the plaintiff must show not only fraud, but *consequent damage.* The same rule applies where a party seeks to avoid a contract on that ground and recover back the consideration. The plaintiffs insist they have suffered damage in consequence of the minority of Robert H. Hill. It appears that on the 8th of July, after the plaintiffs had failed to agree on the price of this contract, Putnam, one of the plaintiffs, went to Washington for the purpose of getting the contract anulled there on the ground of the failure of Robert H. Hill to carry the mail on the first of July, and to obtain the contract, and that on the 10th Thompson, not having any confidence in Putnam's success in that attempt, sent to the defendant that they would purchase the contract of him at the $200., what the defendant had previously asked, which resulted in the trade as already stated. Putnam succeeded on the 10th of July at Washington in getting the contract with Robert H. Hill annulled, and procured a contract with the department at the same price. The plaintiffs claim that if Thompson had known that Robert H. Hill was a minor he should not, as the

case finds, have made the contract, and if he had not, then the plaintiffs would have had it through the efforts of Putnam, without paying the $200. Is this such damage as entitles the plaintiffs to recover? If the plaintiffs in consequence of having been induced to believe that Robert H. Hill was a person of full age, are entitled to be put in the same condition as if they had not made the contract with the defendant, the defendant's proposition is sound. But that is not the rule. The rule is in cases of fraudulent representations, that the party is entitled to be put in the same condition as if the representation had been true. If the party is just as well off as if the representation was true he cannot complain, for he has suffered no damage. If the representation had been true, then Putnam would not have got the contract at Washington, if Hill's contract was annulled there as the plaintiffs claim it was, on the ground of Hill's minority. Again, the plaintiffs have got just what they purchased of the defendant, and have lost nothing in consequence of Robert H. Hill being a minor. If they have not got it precisely in the same manner contemplated, it is because they did not choose to. It is evident the plaintiffs might have obtained the benefits of that contract in the mode contemplated in their agreement with the defendant. The mode by which the plaintiffs obtained it was equally beneficial. The plaintiffs cannot complain that the contract with Hill was annulled. They were not prejudiced by it, for they got the contract on the same terms. They cannot complain of an act that was done by their own procurement. The department was informed on or about the 2d of July that Robert H. Hill was a minor, the defendant had guaranteed the contract, and the post office department took no steps to annul it, but suffered the contractor, or the defendant for him, to continue in the performance of it from that time till the 10th of July, when Putnam arrived there for the purpose of obtaining the contract, when as McLane says in his deposition, " Putnam proposed to take the contract at the same pay ; the contract with R. H. Hill was annulled on the 10th day of July, 1861, and a contract ordered with Edward Putnam for the route, to take effect from the date of his commencement of service." It does not appear expressly whether the contract was annulled on account of minority or neglect to carry the mail on the 1st and 2d of July. In all probability the

Putnam et al. *v.* Hill.

department would have suffered the contract to stand if the plaintiffs had not procured it to be annulled. At least it cannot be assumed that they would not. It is not in accordance with our ideas of justice and law, to hold that an act procured by the plaintiffs and which did them no injury, is a ground of recovery by them.

But it is insisted by the plaintiffs that Putnam, at Washington, had actually obtained the contract before Thompson, his partner here, had closed the trade with the defendant, so that there was nothing for the defendant to sell, and that Thompson bought the contract without knowing that Putnam had obtained it. There certainly was no fraud or concealment on the part of the defendant in this respect, for he was equally ignorant with Thompson of what Putnam had done, and for aught that appears, ignorant that Putnam had gone to Washington to obtain the contract. Thompson knew that Putnam had gone for that purpose, and having no confidence in Putnam's success, as the case states, he chose to make the purchase. Under these circumstances we should hesitate much before yielding to the proposition that the plaintiffs ought to derive any advantage from the fact that Putnam succeeded at Washington while this negotiation was going on here, and before it was consummated by the payment of the money. But upon the facts, this contract between these parties was substantially made on the 10th of July. The terms were proposed and accepted, the defendant delivered, and Thompson accepted, the paper directing the department to issue or transfer the contract to the plaintiffs, and Thompson promised to send the money the next day. This bound the plaintiffs to the performance of the agreement. The final execution of the agreement was delayed to the 12th of July only by the neglect of Thompson to send the money. In this view it does not appear that Putnam obtained the contract at Washington before the sale in question.

Judgment reversed and judgment for the defendant.